Ronald KOLBY, et al., Respondents,

v.

NORTHWEST PRODUCE COMPANY, INC., currently out of business, et al., Defendants,

Progressive Insurance Company, an Ohio corporation, licensed to do business in Minnesota, Appellant,

Hartford Insurance Company, a Connecticut corporation, licensed to do business in Minnesota, Respondent.

No. C3-93-493.

Court of Appeals of Minnesota.

Sept. 14, 1993.

John T. Buchman, John J. Gores, Soucie & Buchman, Ltd., Anoka, for Ronald Kolby.

William M. Hart, Thomas H. Crouch, Meagher & Geer, Minneapolis, Laurence J. Rabinovich, Schindel, Cooper & Farman, New York City, for appellant.

James T. Martin, Dan T. Ryerson, Gislason, Martin & Varpness, Edina, for Hartford Ins. Co.

Considered and decided by ANDERSON, C.J., and LANSING and FLEMING,* JJ.

## OPINION

ANDERSON, Chief Judge.

Progressive Insurance Company appeals the district court's summary judgment determining an insurance policy issued by it affords liability coverage to respondent Northwest Produce Company as a permissive user of a motor vehicle owned by Progressive's insured. We reverse.

## FACTS

In June 1988, respondent United Van Bus Delivery (United) contracted with defendant Northwest Produce Company, Inc. (Northwest) to carry shipments of fruits and vegetables for Northwest. Northwest owned refrigerated/heated trailers, but United did not. Accordingly, Northwest loaded produce shipments on its own trailers, to be hauled by United tractors. The contract specified that United was an independent contractor that would "have exclusive control and direction of the persons operating the equipment engaged in the transportation services to be performed."

In October 1988, Ronald Kolby, a United employee, was driving a tractor leased by United from a Ryder Truck Rental agency. United had leased the Ryder tractor when one of its own tractors broke down in Winnipeg. Kolby drove to the Northwest facility where a Northwest trailer loaded with produce was connected to the Ryder tractor. He was to take the produce to Winnipeg, return the tractor to Ryder, pick up a United tractor from a repair shop in Winnipeg, and drive the United tractor back to Minnesota.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

While driving to Winnipeg, Ronald Kolby rear-ended another tractor-trailer which was pulling out of a rest stop onto I–94 near Fergus Falls. Kolby was unable to slow down in time to avoid the accident. He claimed the brakes on the Northwest trailer were improperly maintained, causing him to lose braking ability.

Ronald Kolby and his wife sued Northwest, alleging Northwest negligently maintained its trailers and that Northwest's negligent maintenance was the proximate cause of the accident. Northwest was insured by respondent Hartford Insurance Company (Hartford) and United was insured by appellant Progressive Insurance Company (Progressive). Hartford and Progressive disagreed on which company was responsible for defending the Kolbys' action, and the Kolbys brought the present declaratory judgment action. The Kolbys, Hartford, and Progressive all moved for summary judgment. Hartford admits its policy provides coverage for Northwest, but contends that its coverage is in excess of Progressive's coverage. Progressive contends that Northwest is not an "insured" under its policy, and thus it has no obligation to defend or indemnify Northwest for any liability arising out of Northwest's alleged failure to maintain the brakes on its trailer.

The Progressive policy defines "insured" as follows:

1. WHO IS AN INSURED

The following are "insureds".

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow * * *.

c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit * * *.

The Kolbys and Hartford claimed coverage under clauses b and c. The district court concluded there was no coverage under clause c, holding United did not "hire or borrow" the Northwest trailer. However, the court held Northwest qualified as an "insured" under clause b as a permissive

user of United's tractors because Northwest "had its goods transported to a destination that it selected." The court issued a declaratory judgment that Progressive provides primary liability coverage for Northwest and is obligated to defend Northwest and that Hartford provides excess liability coverage to Northwest and is obligated to defend Northwest for excess liability coverage. Progressive appeals.

## ISSUES

I. Did the district court err in holding Northwest was an insured under the Progressive policy?

II. Does respondents' failure to file a notice of review challenging aspects of the district court judgment decided adversely to respondents prevent review of those aspects of the judgment?

## ANALYSIS

### Standard of Review

On appeal from a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The parties agree the relevant facts are not in dispute. At issue is the interpretation of an insurance policy, a question of law that this court reviews de novo. *See Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978).

### I. Coverage

The Progressive policy defines "insured," under clause b, to include persons who "use" the named insured's vehicle with the named insured's permission. Such a provision is commonly referred to as an omnibus clause. 12 Mark S. Rhodes, *Couch on Insurance* 2d § 45:291 (1981). "Use" of a motor vehicle has a broader meaning than "operation" of a motor vehicle. *West Bend Mut. Ins. Co. v. Milwaukee Mut. Ins. Co.*, 384 N.W.2d 877, 879 (Minn.1986). Whether Northwest was using the United tractor depends upon the extent of control assumed by Northwest over the tractor. *See Woodrich*

*Constr. Co. v. Indemnity Ins. Co.,* 252 Minn. 86, 93, 89 N.W.2d 412, 418 (1958) (use of a motor vehicle includes exercise of supervisory control over vehicle's movement).

In *Woodrich,* a cement truck "hired" by a subcontractor entered a construction site where employees of the general contractor gave the driver of the truck directions, including signaling the driver to back up. The driver, in backing up, struck the plaintiff.[1] In concluding the general contractor's employees were using the cement truck, the *Woodrich* court noted:

> The very moment the vehicle entered the congested area the driver became subject to the exclusive control and supervisory direction of [the general contractor] and its servants.

*Woodrich,* 252 Minn. at 92, 89 N.W.2d at 417.

In assuming exclusive supervisory control of the Zaske truck in the congested area, was Woodrich *using* the vehicle? The broad and common meaning of the word *use* compels an affirmative answer. The *use* of a motor vehicle does not require that the *user, or the user's agent,* be its actual operator. It is common knowledge that the use of a motor vehicle may be furnished by the owner to another with or without a driver. Many decisions have in effect recognized *use* as going beyond the narrow meaning of the direct mechanical operation performed by the driver and as encompassing the broader concept of employing or putting the vehicle *into* one's service by an act which assumes at any time—with the consent of the owner or his agent—the *supervisory control or guidance of its movements.*

*Id.* 89 N.W.2d at 418 (emphasis in original) (italics added).

■ Before coverage will be found under clause b of Progressive's policy, Northwest, as the omnibus insured, must have some supervisory control over the vehicle. *See Continental Ins. Co. v. United States Fidelity & Guar. Co.,* 528 P.2d 430, 433–34 (Alaska 1974); *Southern California Petroleum Corp.*

*v. Royal Indem. Co.,* 70 N.M. 24, 27, 369 P.2d 407, 410 (1962). It is the exercise of control that determines whether coverage exists under the omnibus clause. *See Ed Kraemer & Sons v. Transit Cas. Co.,* 402 N.W.2d 216, 220 (Minn.App.1987) (quoting *Nicollet Properties, Inc. v. St. Paul Mercury Ins. Co.,* 271 Minn. 65, 73, 135 N.W.2d 127, 132 (1965)), *pet. for rev. denied* (Minn. May 18, 1987); *see also Woodrich,* 252 Minn. at 93, 89 N.W.2d at 418 (extending coverage to persons "using" the insured's vehicle depends on the extent of control assumed).

The Alaska Supreme Court found insufficient control in *Continental,* 528 P.2d at 434. In that case, a general contractor entered into a contract to strengthen a dam. The job required rock be hauled from a quarry at the end of the lake opposite from the dam. The general contractor entered into an agreement with a trucking subcontractor in which the subcontractor hauled the rock with the subcontractor's trucks and drivers. The most direct route from the quarry to the construction site was across the frozen lake during winter. The general contractor plowed snow off the lake surface, creating a roadway 50 to 60 feet wide. After testing by the subcontractor's president and a vice president of the general contractor, the subcontractor's employees began to haul half-loads of rock. Two trucks broke through the ice, and their drivers were killed. Wrongful death actions were brought and settled; subsequently, the question arose whether the general contractor's or the subcontractor's insurer was responsible for paying the settlements. The court ruled the general contractor had insufficient control over the operation of the subcontractor's trucks to be considered a user of the subcontractor's trucks. The court noted:

> Aside from the construction and maintenance of the road, the entire concerns of the [general contractor's] officer and employees at the job site were the loading and unloading of the vehicles. Except in the unloading area, remote from the accident, no [general contractor's] employee

---

**1.** The facts of *Woodrich* are set out in *Crawford v. Woodrich Constr. Co.,* 239 Minn. 12, 57 N.W.2d 648 (1953).

directed [subcontractor's] trucks or drivers regarding speed, route, spacing or even weight of load.

*Continental,* 528 P.2d at 433.

 In the present case, Northwest exercised even less control than the general contractor did in *Continental.* There is no indication that Northwest instructed Kolby on which route to take to Winnipeg. In fact, the contract between United and Northwest indicates that Northwest did not have this authority. The contract provided that United was an independent contractor and had "exclusive control and direction of the persons operating the equipment." Northwest did not exercise control over the tractor at the time of the accident. The fact that Northwest chose the destination of the delivery does not rise to the level of supervisory control to make it a user under clause b of Progressive's policy.

. This conclusion is further supported by a holding of the Indiana Supreme Court relying on the Minnesota Supreme Court's reasoning in *Woodrich. See Protective Ins. Co. v. Coca Cola Bottling Co., Indianapolis—Inc.,* 467 N.E.2d 786, 790 (Ind.App.1984). In *Coca Cola,* a trailer owned by the Coca Cola Bottling Company–Indianapolis (Coke) and loaded with empty bottles was being returned to Coke. After being directed by a Coke employee as to where to park the trailer, the driver and the owner of the tractor began to disconnect the trailer from the tractor. As the tractor was being driven away from the trailer, the tractor became stuck in the ice and snow that had accumulated in the parking lot. In the ensuing attempt to free the tractor, the owner was killed. The Indiana Court of Appeals found insufficient control to make Coke a user of the tractor, noting that

Coke's dispatcher did not actively control, guide, or direct the movement of [the tractor] at the crucial moment, *i.e.,* when the truck was being disconnected.

*Coca Cola,* 467 N.E.2d at 790.

Under Indiana law, "use" of a vehicle means activity "that assists in propelling or directing a vehicle to a place where it ceases to be employed."

*Miller v. Loman,* 518 N.E.2d 486, 492 (Ind. App.1987) (quoting *Protective,* 467 N.E.2d at 786), *quoted in Auto Owners Mut. Ins. Co. v. L.P. Cavett Co.,* 882 F.2d 1111, 1114 (7th Cir.1989).

The Kolbys argue Northwest's requirement that United use Northwest's trailers constitutes supervisory control sufficient to make Northwest an omnibus insured. We disagree. Northwest did not require use of its trailers. United only used Northwest's trailers because United had no trailers suitable for hauling produce. Respondents argue control can be found based on Northwest's loading its trailers and having United tractors come to the Northwest facility to pick up the loads. It is theoretically possible that Northwest exercised sufficient control within the confines of its own facility to be deemed a user of the United tractors on its premises. We are not deciding that issue. On the facts before us, any control Northwest may have exercised while the tractor was at Northwest's facility had ceased by the time of the accident. As in *Continental,* 528 P.2d at 433, Northwest's facility was "remote" from the accident.

Northwest did not exercise supervisory control over the movement of the United tractor at the time of the accident. Therefore, we conclude the district court erred in holding Northwest was using the tractor at the time of the accident. Northwest is not an insured under clause b of the Progressive insurance policy.

## II. *Notice of Review*

 In the district court, the Kolbys and Hartford argued that Northwest was an insured under the Progressive policy pursuant to paragraph c of the policy's definition of "insured." Neither Hartford nor the Kolbys filed a notice of review of the trial court's conclusion that there was no coverage under clause c. Accordingly, only the district court's determination that Northwest was an insured under clause b is properly before the court. *See Arndt v. American Family Ins. Co.,* 394 N.W.2d 791, 793–94 (Minn.1986). If the district court had not decided the issue of coverage under clause c, no notice of review would have been necessary. *Hoyt Investment Co. v. Bloomington Commerce & Trade*

*Ctr. Assocs.,* 418 N.W.2d 173, 175 (Minn. 1988). However, the district court *did* decide the issue. This court will not consider a challenge to issues decided adversely to a respondent when the respondent has not filed a notice of review. *Furrer v. Campbell's Soup,* 403 N.W.2d 658, 660 (Minn.App. 1987), *pet. for rev. denied* (Minn. May 28, 1987); *see also Western Lake Superior Sanitary Dist. v. Orfei & Sons, Inc.,* 463 N.W.2d 781, 786–87 (Minn.App.1990), *pet. for rev. denied* (Minn. Feb. 20 & Mar. 15, 1991).

Hartford contends no notice of review was needed because there was no separate order or judgment adverse to them. However, this court has refused to address respondents' challenges to parts of the order or judgment appealed when no notice of review has been filed. *See Acton Constr. Co. v. State,* 363 N.W.2d 130, 135 (Minn.App.1985); *Smoliak v. Myhr,* 361 N.W.2d 153, 157 (Minn.App. 1985). Respondents' claim of coverage under clause c is not properly before this court and will not be addressed.

### DECISION

Northwest was not using United's tractor at the time of the accident, and therefore the Progressive policy does not afford coverage.

**Reversed.**